IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHARLES PHILLIP MAXWELL,      ) | |
| ) | |
| Plaintiff,      ) | |
| ) | |
| v.      ) | NO. 3:06-0201 |
| ) | JUDGE HAYNES |
| THE STANLEY WORKS,      ) | |
| HUSKY PROFESSIONAL TOOLS,      ) | |
| GEORGE WANNOP,      ) | |
| ) | |
| and      ) | |
| ) | |
| MIDLAND DESIGN, INC.,      ) | |
| ) | |
| Defendants.      ) | |

## MEMORANDUM

Plaintiff, Charles Phillip Maxwell, filed this pro se action under the federal patent statute, 35 U.S.C. § 100 et seq. against Defendants: The Stanley Works and Husky Professional Tools (collectively "Stanley"); George Wannop, a Canadian citizen; and Midland Design, Inc. ("Midland"), a Canadian corporation. The gravamen of the complaint is that Plaintiff is the sole and original inventor of a rotational ratchet wrench that was later patented by Midland with Wannop listed as the sole inventor. In essence, Plaintiff seeks: (1) a declaratory judgment that Plaintiff is entitled to all patent rights to the disputed wrench invention and that Midland's patent is void; (2) alternatively, a judgment awarding Midland's patent to Plaintiff; (3) a judgment awarding Plaintiff a co-ownership of the patent with a percentage of past sales of the wrench, as well as inventorship royalties from past, present, and future sales of the wrench and treble

1

damages. The Court has jurisdiction over this matter under 28 U.S.C. § 1338(a), which provides original jurisdiction to the District Courts in patent cases.[1]

Before the Court are Defendants Midland and Wannop's joint motion to dismiss (Docket Entry No. 14) and Defendant Stanley's motion to dismiss (Docket Entry No. 7). In their motion to dismiss, Midland and Wannop contend, in sum: (1) that this Court lacks subject matter jurisdiction over this complaint because there is no case or controversy as required for a declaratory judgment action for patent infringement; (2) that this Court lacks personal jurisdiction over Midland and Wannop because they do not have any substantial contacts with Tennessee; (3) that Plaintiff did not properly serve Midland or Wannop in violation of the Hague Convention; and (4) that Plaintiff fails to state a claim for which relief may be granted because Plaintiff lacks an enforceable intellectual property right and standing to challenge the patent's ownership.

In its motion to dismiss (Docket Entry No. 8), Stanley argues, in sum: (1) that this Court lacks subject matter jurisdiction over this complaint because there is no case or controversy as required for a declaratory judgment action for patent infringement; (2) that Plaintiff has failed to state a claim for which relief may be granted because Stanley is not the owner of the disputed patent; (3) Plaintiff lacks an enforceable intellectual property right; (4) Tennessee law does not recognize a claim for conversion of trade secrets; and (5) there is not an actual or implied contract between Stanley and Plaintiff.

In his response (Docket Entry No. 11), Plaintiff asserts: (1) that whether Stanley is the owner or a licensee of the disputed patent is immaterial to his claims; (2) that Plaintiff possesses

---

[1] 28 U.S.C. § 1338(a) provides: "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases. Id.

a valid right to a patent because he is the first true inventor; (3) that Stanley's license was acquired from a wrongful possessor of the disputed patent; (4) that the existence or lack thereof of a contract between Plaintiff and Stanley is a matter for jury determination; and (5) that Plaintiff has never abandoned his invention or the right to receive a patent as the original owner and inventor.

For the reasons set forth below, the Court concludes that Plaintiff has failed to state any claim for which relief may be granted. Accordingly, Stanley, Midland, and Wannop's motions to dismiss should be granted.

### A. ANALYSIS OF THE COMPLAINT

Plaintiff alleges that he is the sole original inventor of a rotational ratchet wrench ("the wrench invention"). (Docket Entry No. 1, Complaint at ¶ 8). The wrench invention, is nearly identical in appearance to a conventional ratchet wrench. (Docket Entry No. 1, Exhibit C attached thereto at 1). In addition to the capabilities of a normal ratchet wrench, the wrench invention allows a user to turn a bolt in either direction by twisting the wrench's handle rotationally. Id. Plaintiff created original drawings of the wrench invention and began a patent application for it. (Docket Entry No. 1 at ¶ 13). On or about 1981, Plaintiff offered the wrench invention for sale to Stanley, as well as other companies and members of the public. Id. at ¶ 20. Stanley responded that it was not interested in his wrench invention. Id. Upon receipt of Stanley's response, Plaintiff abandoned his patent application for the wrench invention. Id. at ¶ 13.

On October 22, 1991, the United States Patent and Trademark Office ("USPTO") issued Patent Number 5,058,463 ("the '463 patent") for a "ratchet wrench with dual-rotating constant drive handle." (Docket Entry No. 8, Memorandum in support of Stanley's motion to dismiss,

3

Exhibit A attached thereto at 1). The '463 patent was assigned to Defendant Midland with Defendant Wannop listed as the inventor. Id. On September 14, 2002, Midland licensed the '463 patent to Stanley, which was recorded by the USPTO on May 3, 2003. (Docket Entry No. 8, Exhibit B attached thereto at 1). Stanley currently offers for sale a "rotator ratchet" under license of the '463 patent. (Docket Entry No. 1, Exhibit B attached thereto at 5).

Plaintiff's claim is that the wrench described in the '463 patent assigned to Midland and licensed to Stanley is exactly the same as the wrench invention that he invented prior to 1981. (Docket Entry No. 1 at ¶ 18). Plaintiff asserts that because he is the original inventor of the wrench invention, he is entitled to all patent rights to the '463 patent. Id. at ¶ 29.[2] Plaintiff also alleges that Defendants are improperly using his invention. Id. at ¶¶ 34-47.

## CONCLUSIONS OF LAW

### 1. Standard of Review

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hartford Fire Ins. Co. v. California, 509 U.S. 764, 811 (1993); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Consideration of a motion to dismiss requires the court accept the complaint's factual allegations as true and to construe the complaint liberally in favor of the plaintiff. Perry v. Am. Tobacco Co., Inc., 324 F.3d 845, 848 (6th Cir. 2003). Despite such liberal construction, a court "need not accept as true legal conclusions or unwarranted factual references." Morgan v. Church's Fired Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (internal quotation omitted). Moreover, "it is not ... proper to assume that the [Plaintiff] can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that

---

[2] It is unclear from the complaint whether Plaintiff has actually filed a new patent application for the wrench invention. See Docket Entry No. 1 at ¶¶ 16, 29.

4

have not been alleged." Assoc. Gen. Contractors v. Cal. State Counsel of Carpenters, 459 U.S. 519, 526 (1983). To survive a motion to dismiss under Rule 12(b)(6), "the complaint must contain 'either direct or inferential allegations respecting all the material elements'" of the claim. Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003) (quoting Schied v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1998)).

For a majority of civil actions, the complaint is sufficient if it satisfies the "notice" pleading requirements of the Federal Rules of Civil Procedure with a "short and plain statement of the claim," because generally "[n]o technical forms of pleadings or motions are required." Fed. R. Civ. P. 8(a)(2), (e)(1). The complaint "does not have to set out in detail the facts on which the claim for relief is based, but must provide a statement sufficient to put the opposing party on notice of the claim." 2 Moore's Federal Practice § 8.04[1] (Matthew Bender 3d ed.). Yet, "[a] complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Performance Contracting, Inc. v. Seaboard Sur. Co., 163 F.3d 366, 369 (6th Cir. 1998).

### a. Subject Matter Jurisdiction for Declaratory Judgment

Plaintiff seeks a declaratory judgment invalidating the '463 patent. (Docket Entry No. 1 at ¶¶ 29-30). Defendants move to dismiss this claim for lack of subject matter jurisdiction to invalidate the '463 patent. The Declaratory Judgment Act, 28 U.S.C. § 2201(a) provides: "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Id. Therefore, Plaintiff may obtain a declaratory judgment invalidating the '463 patent if there is a case or of actual controversy about its ownership.

5

"Federal Circuit law governs [the determination] as to whether an actual controversy exists under the Declaratory Judgment Act when the underlying merits of an action involve patent infringement or validity." Microchip Tech. Inc. v. Chamberlain Group, Inc., 441 F.3d 936, 940 (Fed Cir. 2006). The Federal Circuit has "articulated a two-part test to determine whether an 'actual controversy' exists in actions involving a claim for a declaration of patent invalidity or noninfringement." Id. at 942. A plaintiff seeking declaratory invalidation of a patent "must establish both (1) a reasonable apprehension that it will face a patent infringement suit if it commences or continues the activity at issue, and (2) present activity by the declaratory plaintiff that could constitute infringement, or concrete steps taken by the plaintiff with the intent to conduct such activity." Id. The reasoning for this test is that "the purpose of the Declaratory Judgment Act was to enable a person who is at legal risk because of an unresolved dispute to obtain judicial resolution of that dispute without having to await the commencement of a legal action by the patentee; to 'clear the air.'" Id. at 943.

Here, Plaintiff has not alleged in his complaint that he has been threatened with an infringement suit by any Defendant. The allegations in the complaint do not support an inference that Plaintiff has any such apprehension. To be sure, Plaintiff's complaint alleges that he is conducting or taking steps that would constitute infringement, but his complaint does not reflect that Plaintiff has done anything that could constitute infringement. Because Plaintiff has failed to establish either prong of the Federal Circuit's test for declaratory judgment seeking patent invalidation, the Court lacks jurisdiction over his declaratory judgment claims.

### b. Plaintiff's Challenges under 35 U.S.C. § 256

Plaintiff's also asserts claims that he is the sole inventor or, in the alternative, list him as a co-inventor of the '463 patent under authority of 35 U.S.C. § 256 (Docket Entry No. 1 at ¶¶ 32-33). Section 256 provides:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.
>
> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256.

Plaintiff's contention that he should be named as the sole inventor of the '463 patent appears to be based on an argument that Section 256 allows the Court to order a correction of the '463 patent by substituting his name for Wannop's as the sole true inventor of the '463 patent.[3] This specific issue has not been addressed in the Sixth Circuit, but the Court finds the review of relevant authorities and reasoning in Rawlplug Co., Inc. v. Hilti Aktiengesellschaft, 777 F.Supp. 240 (S.D.N.Y. 1991) to be persuasive on this issue:

> The court in [Dee v. Aukerman, 625 F. Supp. 1427 (S.D. Ohio 1986)] found that [Section] 256 can be interpreted to confer original jurisdiction for adjudication of a *joint* inventorship dispute. 625 F.Supp at 1429. The court also cited with approval the finding of the Ninth Circuit Court of Appeals, which, in addition to holding that Section 256 can be used to correct joint inventorship disputes, held that Section 256 cannot be used to substitute one *sole* inventor for another. Id. at 1428. The Ninth Circuit, in Bemis v. Chevron Research Co., 599 F.2d 910 (9th Cir. 1979), specifically found: "The Congressional committee report on § 256

---

[3] Because Plaintiff does not specify a section of Title 35 of the United States Code, the Court assumes that 35 U.S.C. § 256 is the legal basis for Plaintiff's request to award him the '463 patent or its equivalent. (Docket Entry No. 1 at ¶¶ 28-29). If instead Plaintiff's claim is based on 35 U.S.C. § 145 to obtain a patent, that claim would be dismissed because Plaintiff has not pleaded an appeal of a decision of the Board of Patent Appeals and Interferences.

7

> clearly demonstrates that the statute remedies only innocent errors in joinder or non-joinder of inventors." 599 F.2d at 912.
>
> Similarly, the district court in Rival Mfg. Co. v. Dazey Products Co., 358 F.Supp. 91 (W.D.Mo.1973), found that Section 256 is "limited to the correction of errors involving true joint inventorship and does not contemplate or permit what would amount to a substitution of one inventor entity for another under the guise of 'correction'...." 358 F.Supp. at 101.

Rawlplug, 777 F.Supp. at 243. (emphasis added) The Court adopts Rawlplug Court's to conclude that Section 256's provision for correction of patents does not allow correction by substitution of an alleged true sole inventor for the named sole inventor. Id. Therefore, Plaintiff's claims requesting substitution of his name as sole inventor must be dismissed for failure to state a claim for which relief can be granted.

As stated earlier, Plaintiff's claim asks this Court to add him to the '463 patent as a co-inventor and to correct a non-joinder that is authorized by Section 256. Eli Lily and Co. v. Aradigm Corp., 376 F.3d 1352, 1357 (Fed. Cir. 2004). For this claim Plaintiff, as the party alleging non-joinder, must bear the heavy burden of proving his case by clear and convincing evidence. Id. at 1358. Additionally, "[i]n a section 256 proceeding, '[t]he inventors as named in an issued patent are presumed to be correct.'" Id. (quoting Hess v. Advanced Cardiovascular Sys., Inc., 106 F.3d 976 (Fed. Cir. 1997)).

To be added as a co-inventor on a patent, one must "demonstrate that his labors were conjoined with the efforts of the named inventors." Id. at 1359. Co-inventorship "can only arise when collaboration or concerted effort occurs – that is, when the inventors have some open line of communication during or in temporal proximity to their inventive efforts." Id. "For persons to be joint inventors ... there must be some element of joint behavior, such as collaboration or working under common direction ... Individuals cannot be joint inventors if they are completely ignorant of what each other has done until years after their individual independent efforts. They

8

cannot be totally independent of each other and be joint inventors." Kimberly Clark Corp. v. Procter & Gamble, 973 F.2d 911, 917 (Fed. Cir. 1992).

Here, Plaintiff cannot be a co-inventor of the '463 patent because his complaint does not allege that he collaborated with Wannop at any time in the development of the '463 patent nor can inferences be drawn from his complaint that Plaintiff has ever had any contact with Wannop at all. Plaintiff's complaint alleges that he was the "sole original inventor" of the wrench invention, an allegation that clearly reflects that Defendant did not work with anyone else on the invention. (Docket Entry No. 1 at ¶ 8). Although Plaintiff and Wannop may have conceived nearly identical inventions, the fact that they did not work together on their inventions precludes a claim as a co-inventor of the '463 patent. The Court concludes that Plaintiff's claims as a co-inventor should be dismissed for failure to state a claim for which relief can be granted.

### b. Plaintiff's Claims to Intellectual Property Rights

Plaintiff also asserts multiple claims that Defendants are violating his intellectual property rights by using the wrench invention. (Docket Entry No. 1 at ¶¶ 34-38).[4] United States patent law provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title." 35 U.S.C. § 101. A party commits patent infringement when the infringing party "without authority makes, uses, offers to sell, or sells any patented invention ..." 35 U.S.C. § 271(a) (emphasis added).

Here, the Plaintiff not possess a patent for the wrench invention. Although Plaintiff may theoretically be able to obtain a patent for the wrench invention from the USPTO, at this point Plaintiff does not possess a patent to give rise to for the intellectual property interests. The

---

[4] Due to the length and overall lack of clarity in the complaint, the Court finds that the essence of Plaintiff's claim in ¶¶ 34-38 is that Plaintiff's intellectual property is being used by Defendants without compensation.

Court's research has not disclosed any case law finding patent infringement where the party claiming infringement did not possess an actual patent. Because Plaintiff lacks any "patent rights", a patent or trademark, the Court concludes that Plaintiff's complaint fails to state a claim on this theory.

### c. Plaintiff's Allegations of Breach of Contract Against Stanley

Plaintiff's next claim is that Stanley has breached an actual or implied contract between itself and Plaintiff by Stanley's sales of this product. (Docket Entry No. 1 at ¶ 39). "In federal question cases, a District Court entertaining pendent state claims should follow the choice of law rules of the forum state." Glennon v. Dean Witter Reynolds, Inc., 83 F.3d 132, 136 (6th Cir. 1996). Because Tennessee is the forum state, "an analysis of Tennessee choice-of-law principles is required to determine what state's law should be applied" to Plaintiff's breach of contract claims. Id.

"Tennessee choice of law rules dictate that Tennessee courts apply the law of the state with the most significant relationship to the occurrence and the parties." Id. In determining which state has the most significant relationship, the Court must consider: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Id. (quoting Restatement (Second) of Conflict of Laws § 145 (1971)).

Here, the Court concludes that Tennessee law should apply to Plaintiff's breach of contract claims because Tennessee has the most significant relationship to occurrence and the parties. The first two considerations do not lend themselves toward any particular state. The strongest consideration is that Plaintiff is a Tennessee resident and Stanley is corporation that

10

conducts business in Tennessee. Additionally, Tennessee is a place where the relationship between the parties would be centered.

Under Tennessee law, "contracts can be either express, implied in fact, or implied in law." River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc., 173 S.W.3d 43, 57 (Tenn. Ct. App. 2003).

> Express contracts and contracts implied in fact result from a meeting of the minds of the contracting parties; the parties mutually assent to the contract's terms. In order to be enforceable, such contracts must be sufficiently definite and must be based on consideration. The primary difference between an express contract and a contract implied in fact is the manner in which the parties manifest their assent. In an express contract, the parties assent to the terms of the contract by means of words, writings, or some other mode of expression. In a contract implied in fact, the conduct of the parties and the surrounding circumstances show mutual assent to the terms of the contract.

Id. (internal citations omitted). An offer to assent may be terminated in a number of ways, including express rejection by the offeree or lack of acceptance within a reasonable time. Akers v. J.B. Sedberrry, Inc., 286 S.W.2d 617, 641 (Tenn. Ct. App. 1956). "An offer terminated in either of these ways ceases to exist and cannot thereafter be accepted." Id.

In contrast, implied in law contracts "are created by law without the assent of the party bound, on the basis that they are dictated by reason and justice." River Park Hosp., 173 S.W.3d at 57. Actions for implied in law contract are also referred to as unjust enrichment, quasi contract, and quantum meruit. Id. To establish an implied in law contract claim, "the plaintiff must show that (1) a benefit has been conferred upon the defendant; (2) the defendant appreciated the benefit; and (3) acceptance of the benefit under the circumstances would make it inequitable for the defendant to retain the benefit without paying the value of the benefit." Id. at 58.

11

Here, there is not an express contract between Plaintiff and Stanley because Stanley expressly rejected Plaintiff's offer to accept Plaintiff's wrench invention, thereby terminating the offer. (Docket Entry No. 1 ¶ 20). Plaintiff does not allege any conduct by Stanley within a reasonable time that could be viewed as mutual assent to the terms of a contract. Stanley did not begin manufacturing a product similar to the wrench invention until more than twenty years after Plaintiff's offer. Id. at ¶ 17.[5] There is not any benefit conferred upon Stanley that Stanley retained without paying value for the benefit. Stanley received a license from Midland to use the '464 patent. (Docket Entry No. 8, Exhibit B attached thereto at page 1). With its purchase of this license, Stanley paid value for the benefit of the license. On these allegations, Plaintiff is unable to state a claim for an implied in law on unjust enrichment.

In closing, Defendants Midland and Wannop have also moved to dismiss for this Court lacks personal jurisdiction over them and improper service of process. Because all claims against Midland and Wannop are dismissed on other grounds, the Court need not address these contentions in their motion to dismiss.

An appropriate Order is filed herewith.

**ENTERED** this the 11th day of July, 2006.

WILLIAM J. HAYNES, JR.
United States District Judge

---

[5] Had Stanley not responded to Plaintiff but instead began to manufacture the wrench invention within a reasonable time of receiving Plaintiff's offer, that action could be construed as conduct showing mutual assent to the contract terms.